**EXHIBIT C**



LEXSEE 2002 U.S. DIST LEXIS 9957

**GM NETWORK LIMITED et ano., Plaintiffs, - against - E-GOLD LTD., et al., Defendants.**

**01 Civ. 9621(RMB)(DFE)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2002 U.S. Dist. LEXIS 9957*

**May 17, 2002, Decided**
**May 17, 2002, Filed**

**DISPOSITION:** Court encouraged the parties to reach a compromise on the issue of whether plaintiffs' expert and counsel should be allowed to copy defendants' software code. If parties fail to reach a compromise, court stated that the parties should then submit a joint letter to the court.

**COUNSEL:** **[*1]** For GM NETWORKS LIMITED, NET TRANSACTIONS LIMITED, plaintiffs: Timothy Edward De Masi, Pennie & Edmonds, Jonathan A. Marshall, Pennie & Edmonds, L.L.P., New York, NY.

For NET TRANSACTIONS LIMITED, plaintiff: Thomas P. Scully, Pennie & Edmonds, New York, NY.

For E-GOLD, LTD., GOLD & SILVER RESERVE, INC., DIGIGOLD, LTD., DOUGLAS JACKSON, BARRY K. DOWNEY, THE JACKSON FAMILY TRUST, THE DOWNEY FAMILY TRUST, BAXTER ,BAKER, SIDLE, CONN & JONES, P.A., HILDEBERTO S. DE FRIAS, MICHAEL J. MELLO, DOES 1-10, defendants: Joseph R. DelMaster, Stephen B. Schott, Drinker, Biddle & Reath, L.L.P., Philadelphia, PA.

For E-GOLD, LTD., GOLD & SILVER RESERVE, INC., DIGIGOLD, LTD., DOUGLAS JACKSON, BARRY K. DOWNEY, THE JACKSON FAMILY TRUST, THE DOWNEY FAMILY TRUST, BAXTER ,BAKER, SIDLE, CONN & JONES, P.A., HILDEBERTO S. DE FRIAS, MICHAEL J. MELLO, DOES 1-10, counter-claimants: Joseph R. DelMaster, Stephen B. Schott, Drinker, Biddle & Reath, L.L.P., Philadelphia, PA.

For GM NETWORKS LIMITED, NET TRANSACTIONS LIMITED, counter-defendants: Timothy Edward De Masi, Pennie & Edmonds, Jonathan A. Marshall, Pennie & Edmonds, L.L.P., New York, NY.

For NET TRANSACTIONS LIMITED, counter-defendant: **[*2]** Thomas P. Scully, Pennie & Edmonds, New York, NY.

For DOUGLAS JACKSON, counter-defendant: Joseph R. DelMaster, Stephen B. Schott, Drinker, Biddle & Reath, L.L.P., Philadelphia, PA.

**JUDGES:** DOUGLAS F. EATON, United States Magistrate Judge.

**OPINIONBY:** DOUGLAS F. EATON

**OPINION:**

MEMORANDUM AND ORDER

DOUGLAS F. EATON, United States Magistrate Judge.

On May 6, I held a telephone conference with Mr. DeMasi and Mr. DelMaster about a joint letter they were working on. I explained that my joint-letter requirement is not necessarily concluded by one draft from each side. Compromises and changes of position should not be discouraged. On or about May 8, Mr. DelMaster decided to opt out of the joint-letter process because he was upset with some of Mr. DeMasi's footnote retorts. I think those retorts were not very constructive, but Mr. DelMaster should have stuck with the joint-letter process. On May 15, Mr. DeMasi sent me the May 8 joint draft -- 19 pages, of which 9 pages were written by Mr. DelMaster. Next, I received Mr. DelMaster's May 14 letter devoted entirely to his position -- 15 pages but in a larger type font, and containing only a small amount of new text.

At footnote 23 of the May **[*3]** 8 joint draft, Mr. DeMasi says "In light of Rule 34, Defendants should have moved for a protective order instead of forcing Plaintiffs to move to compel." I do not care which side starts the joint-

letter process; in essence, the defendants have moved for a protective order. I am unhappy that Mr. DelMaster's did not stick with the joint-letter process; he has forced me to read the same arguments twice. Nevertheless, I find that his clients are mostly correct on the merits of these particular discovery disputes.

The plaintiffs allege that two of their patents are being infringed by the defendants. The plaintiffs' computer expert, Saji Antony, has submitted a two-page declaration dated May 8. He acknowledges that he has reviewed the defendants' e-gold source code on April 15, 22, 24 and 25 in the offices of defendants' counsel. He notes that "the names of tables in the source code were replaced with generic names in sequential format, *i.e.*, Table1, Table2, which give no indication of the type of information those tables actually contain." If he asks the defendants for the type of information contained in any particular table, I direct the defendants to answer (under oath, if **[*4]** requested). Mr. Antony also notes that "there are references to variables which refer to the data . . . . Without knowing the actual data in the database to which those variables refer, I cannot determine what many of those variables mean . . . ." If he asks the defendants for the type of data referred to by any particular variable, I direct the defendants to answer (under oath, if requested). On the present record, I am unconvinced that Mr. Antony has any need to see the "transaction and account data in the database." This data contains confidential financial information about thousands of customers of the defendants, and I must take their interests into consideration. The plaintiffs' expert and counsel ought not to get such information merely by saying that they will abide by the existing Protective Order. They make three arguments why they need to see this confidential information.

1. The plaintiffs argue that they need to see how many of these customers are in New York, to establish our Court's jurisdiction over the defendants. As I read pages 14-15 of the May 8 draft, two defendants (e-gold, Ltd. and Gold & Silver Reserve, Inc.) have conceded, for purposes of this litigation, **[*5]** that they have conducted sufficient business in New York so that our Court may exercise jurisdiction over them. By using this concession as a building block, the plaintiffs have a fair opportunity to make their case for jurisdiction over the other defendants, by eliciting evidence of the extent to which each of the other defendants has been involved in the business of e-gold, Ltd. and/or Gold & Silver Reserve, Inc.

2. The plaintiffs argue that the actual "transaction and account information is essential to the second step of the infringement analysis," namely the comparing of the patent's claims with the accused product or process. The defendants say:

> Plaintiff's expert should be capable of verifying how the system works by analyzing the operational code. He certainly will not locate system functionality in the database, as the plaintiff contends. If the expert cannot determine system operation from the software itself, then written discovery and depositions of the e-gold software engineers can fill in the gaps . . . . It bears noting that plaintiff has not requested in any written discovery a description of system operation that would assist its expert in his analysis.

**[*6]**

The plaintiffs retort that they should be allowed to verify such testimony by seeing the transaction and account database. At this stage, I am unpersuaded. The plaintiffs may renew their request after taking the testimony, when they may have specific examples of what they need to verify.

3. The plaintiffs argue that they need the transaction and account information to calculate the amount of their lost profits. The defendants say:

> A program can be prepared to scan the appropriate fields in the database, extracting the transaction count, and fees accrued, for each type of fee-generating transaction in the e-gold system. These figures could be produced in both hard copy and electronic form to plaintiff. If plaintiff is concerned about accuracy, e-gold is amenable to plaintiff's expert verifying the software that performs the task and being present in Florida (where the database resides) when it is performed.

This proposal adequately deals with transaction fees lost by plaintiffs due to the alleged infringement. As to their account "holding" fees, plaintiffs acknowledge that the defendants have proposed to extract "the average value of each account over time." But plaintiffs **[*7]** say: "Plaintiffs' lost account holding fees are calculated by multiplying the account holding fees they would have received by the actual amount credited to each e-gold account over time, not the average value of each account over time." (emphasis added) Plaintiffs' response strikes me as trivial when compared to the defendants' interest in assuring their customers of confidentiality.

I turn now to the issue of whether plaintiffs' expert and counsel should be allowed to copy defendants' software code. The software code has been designated as "Confidential – Attorney's Eyes Only," and thus, pursuant

to the 3/21/02 Stipulated Protective Order, cannot be disclosed to the plaintiffs, only to their counsel and "experts and consultants, and their support staffs, engaged by counsel or the parties to assist in this litigation."

On March 27, plaintiffs' expert Mr. Antony signed a Confidentiality Undertaking, and on April 8 he signed a declaration that "I have never been employed by or consulted with Plaintiffs, and I do not plan on becoming employed by or consulting with Plaintiffs, other than in connection with this case." (May 8 joint draft, Tab 15, P 4.) Nevertheless, the defendants **[*8]** argue that there would be an unwarranted risk to e-gold and its clients if Mr. Antony were permitted to have a copy of the e-gold software code except on the terms and conditions that have been in effect to date. Mr. DelMaster's May 14 letter describes them at page 7:

> . . . e-gold has produced the code for inspection and analysis at the Florham Park, N.J. offices of e-gold's counsel . . . . The software is installed in a computer to which [plaintiffs' expert and counsel] are given access for as long as necessary on virtually any day they request it [on two days notice]. A paralegal . . . keeps a quiet and distant vigil while the inspection is conducted[,] simply to ensure that no software is copied (electronically) by plaintiffs' expert or counsel. Both the expert and counsel are capable of making notes about the software and taking the notes away with them when they are finished for the day.
>
> . . . . Exhibits can be made for deposition and trial in cooperation with plaintiffs' counsel very easily. Plaintiffs' expert can designate code portions for copying as exhibits and they will be duplicated at his request for deposition or trial. The only restriction is that the exhibits **[*9]** remain in defendants' control. The expert and counsel have full access to the code itself, and to the exhibits, for formulating their inquiries.

In principle, I find these terms and conditions to be reasonable. I will change my mind if they turn out to be unreasonable in practice. I disagree with plaintiffs' claims that the presence of the paralegal "prevents Plaintiffs' attorneys and experts from having a privileged communication while actually looking at the e-gold source code." They can communicate by notes. Nor do I see "an improper invasion of the attorney work product privilege."

If the plaintiffs are reasonable in their selection of exhibits, it may be that the expert and counsel should be allowed to take a copy of some exhibits to plaintiffs' counsel's office, to be kept there under strict security. But I would need to hear about the specifics of such exhibits. I urge the attorneys to attempt to reach a compromise on this issue; if they fail, they can send me a joint letter.

DOUGLAS F. EATON

United States Magistrate Judge

Room 1360, U.S. Courthouse

500 Pearl Street

New York, NY 10007

Telephone: 212-805-6175

Fax: 212-805-6181 (fax only)

Dated: New York, **[*10]** New York

May 17, 2002